IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| STAN BODA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 07-86-MO |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

MOSMAN, J.,

Plaintiff Stan Boda challenges the Commissioner's decision denying his application for

disability insurance benefits under Title II of the Social Security Act. I have jurisdiction under 42

U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

The court reviews the Commissioner's decision to ensure that proper legal standards were

applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g);

*Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). The administrative

law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Mr. Boda argues the ALJ erroneously assessed his residual functional capacity ("RFC") and elicited testimony from the vocational expert ("VE") with a hypothetical question that did not accurately reflect his functional limitations.

**A.    RFC Asessment**

The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by his impairments. 20 C.F.R. § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 * 5. Mr. Boda challenges the RFC assessment on the grounds that the ALJ improperly rejected his testimony and the statements of his mother regarding his limitations.

Mr. Boda testified that he suffers from chronic headaches of varying severity. On some days they are mild and subside when he takes aspirin; on other days they hit him so hard he becomes shaky, his legs feel weak, and he cannot do anything but sit. Admin. R. 193. Mr. Boda also has chronic neck pain. Mr. Boda is able to be on his feet, move around, and conduct daily activities for only a few hours a day, due to headaches and neck pain. *Id.* at 186.

Mr. Boda testified he does not like to interact with people due to depression and headaches. *Id.* at 187-88. He can only tolerate being around one person at a time. *Id.* at 190. He leaves his house only to have dinner with his mother on Sundays and to go shopping. *Id.* at 192-93. He becomes irritated easily. *Id.* at 189.

2 - OPINION AND ORDER

The ALJ accepted that Mr. Boda has headaches, depression, and a personality disorder with avoidant features. *Id.* at 24. The ALJ found these conditions left Mr. Boda with the RFC to perform work without exertional limitation, but "unable to work closely with co-workers, with exposure limited to brief task-related chores [and] unable to work with the general public." *Id.* at 26.

The ALJ found Mr. Boda's statements about the intensity, duration and limiting effects of his symptoms not entirely credible. *Id.* at 27. He rejected Mr. Boda's assertions that he has functional limitations in excess of his RFC assessment and is unable to perform any substantial gainful activity.

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The ALJ found Mr. Boda satisfied the first stage. Admin. R. 27.

At the second stage of the credibility analysis, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283. He may consider objective medical evidence and the claimant's treatment history. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Id.*; SSR 96-7p, 1996 WL 374186.

Here the ALJ considered proper factors and made specific findings to support his credibility determination. The ALJ reviewed the objective medical evidence and concluded it did not support the severe functional limitations Mr. Boda claimed in his testimony. At the beginning of the relevant time, Mr. Boda had benign medical findings on all objective measures. For example, a chest x-ray in May 2000 showed no pathology. Admin. R. 154. A physical examination of the neck, shoulders and elbows was negative. Mr. Boda had a positive Tinel's sign, and received wrist splints for a possible repetitive motion condition. *Id.* at 144. In July 2000, Mr. Boda had a normal eye examination. *Id.* at 143.

In August 2000, Mr. Boda underwent an outpatient neurological examination by Carol Rozell, M.D., for headaches. Dr. Rozell's findings on physical examination were benign; Mr. Boda appeared healthy and his neck was supple with full range of motion. He did not have abnormalities in mental status, reflexes, motor function or coordination. Dr. Rozell attributed Mr. Boda's headaches to years of analgesic overuse. *Id.* at 145-48.

Mr. Boda did not receive medical treatment for several years thereafter. He allegedly became disabled on December 31, 2000, but did not seek medical care at that time. *Id.* at 57. The ALJ could reasonably expect a disabling change in Mr. Boda's condition to be reflected in his medical records.

In February 2004, Mr. Boda underwent a psychological evaluation by John Adler, Ph.D. Dr. Adler based his evaluation on Mr. Boda's subjective reports and a mental status examination. He made clinical findings that Mr. Boda appeared anxious and depressed, consistent with his subjective report. Mr. Boda was not irritable, however, and interacted appropriately with good cooperation during the evaluation. Dr. Adler also found Mr. Boda did not demonstrate significant impairments

in memory, concentration, verbal skills, calculation skills or any other area of function.  *Id.* at 158-61.

There are no other objective or clinical findings in the case record.  The ALJ could reasonably conclude the severe functional limitations Mr. Boda asserted in his testimony would have caused some observable manifestation to be recorded in his medical charts.

The ALJ found the treatment record demonstrated Mr. Boda did not require frequent or urgent care that would be typical of conditions causing debilitating functional limitations.  In addition, Mr. Boda failed to comply with the treatment modalities Dr. Rozell recommended.  Dr. Rozell instructed Mr. Boda to stop smoking, cut back on caffeine consumption, stop chronic overuse of aspirin to limit rebound headaches and attend insomnia classes.  She recommended a medication regimen to help with headaches, sleep, and depression.  Dr. Rozell made the clinical observation that Mr. Boda seemed resistant to these recommendations.  *Id.* at 145-48.

In fact, Mr. Boda did not comply with these recommendations.  He continues to smoke, consume large quantities of caffeine, and self-medicate with the very analgesics Dr. Rozell believed to be the cause of his headaches.  There is no indication in the record that Mr. Boda attended insomnia class or tried the medication regimen Dr. Rozell believed most likely to alleviate his symptoms.  The ALJ could reasonably conclude that a person experiencing severe debilitating symptoms would attempt to follow the treatment recommendations most likely to alleviate them.

In addition to the minimal objective medical findings and the sparse treatment record, the ALJ also considered Mr. Boda's work history in evaluating credibility.  Mr. Boda alleged he became unable to work in January 2001, but stopped working in December 2000 due to a change in ownership at his place of employment.  Admin. R. 78, 161, 197.  The ALJ could draw an adverse

inference as to credibility from this evidence that Mr. Boda did not stop working due to functional limitations from his medical condition. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (Sufficient reasons for disregarding subjective pain testimony include stopping work due to layoff rather than for medical reasons, failure to seek care at the time claimant stopped work, and failure to seek treatment despite complaints of severe pain).

Finally, the ALJ found Mr. Boda's reported daily activities inconsistent with his asserted limitations. Mr. Boda reported he lives independently, prepares his meals, performs housekeeping chores and yard maintenance, shops, handles his finances, reads several hours a day, works on his car and plays video games. Admin. R. 90-94, 160, 186-87. These activities are not equivalent to full time employment in a work setting. Nevertheless, the ALJ could reasonably find Mr. Boda's ability to accomplish these tasks inconsistent with the claim that his impairments leave him able to be on his feet and moving around only a few hours per day. *Id.* at 186.

Mr. Boda argues the ALJ failed to consider his explanation for the sparse treatment records and his failure to comply with Dr. Rozell's treatment recommendations. SSR 96-7p recognizes that a claimant's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. Similarly, if the medical reports show that the claimant is not following treatment recommendations, and there is no good reason for this failure, the ALJ may draw an adverse inference with respect to the claimant's credibility. The ALJ must not draw such an inference however, without considering any explanations the claimant provides that may explain the failure to seek or follow treatment. SSR 96-7p, 1996 WL 374186, * 7.

Mr. Boda argues the ALJ failed to consider that his inability to afford medical treatment explained his sparse medical records, failure to seek urgent care, and failure to seek treatment for

neck, shoulder and back pain. This argument fails because the ALJ considered the alleged inability to pay for medical care in accordance with SSR 96-7p. Admin. R. at 28. The ALJ found it unpersuasive because Mr. Boda did not seek regular or frequent treatment even while he was still working, despite alleging severe symptoms as early as 1988. *Id.* It is particularly telling that Mr. Boda did not seek treatment when his impairments allegedly became disabling. It is reasonable to expect a person experiencing a significant decline in function to pursue treatment to avoid further decline into disability and unemployment. Accordingly, the ALJ could reasonably draw an adverse inference as to credibility from Mr. Boda's minimal treatment record.

Even if Mr. Boda's financial difficulties explain his failure to seek ongoing treatment at a level consistent with his subjective complaints, they do not explain why he declined to follow Dr. Rozell's recommendations. Accordingly, the ALJ was entitled to draw an adverse inference from Mr. Boda's disregard of Dr. Rozell's treatment regimen, regardless of the explanation that he could not afford other treatment. SSR 96-7p, 1996 WL 374186 * 7-8.

Mr. Boda contends the ALJ failed to consider the side effects from prescribed medications for depression and anxiety. Mr. Boda tried several different prescriptions for depression and anxiety "but they had short-term effectiveness and long-term side effects." Admin. R. 85. He told Dr. Adler he had taken antidepressant medications from 1995 to 2000, which helped him feel more relaxed, but had unspecified problematic side effects. *Id.* at 158-59.

Side effects could provide a reasonable explanation for Mr. Boda's failure to comply with the specific prescriptions that produced them, if the side effects were less tolerable than the symptoms treated. SSR 96-7p, 1996 WL 374186 * 8. Mr. Boda did not specify the nature or severity of the side effects, leaving it unclear whether they could reasonably be considered less

tolerable than his allegedly disabling symptoms.  Side effects do not explain Mr. Boda's failure to comply with Dr. Rozell's treatment recommendations, which did not include the specific medications that produced the side effects.  Nor would side effects explain Mr. Boda's failure to pursue other treatment modalities for depression and anxiety or treatment for his shoulder, neck and back pain.  Accordingly, the ALJ could draw an adverse inference as to credibility from Mr. Boda's failure to comply with Dr. Rozell's treatment recommendations or seek other forms of treatment for his symptoms.

Mr. Boda contends statements about the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.  SSR 96-7p, 1996 WL 374186 * 6.  He also argues that his subjective description of headache pain is itself a medical sign rather than a subjective symptom.  SSR 96-4p, 1996 WL 374187 *3 n.2. These arguments do not help Mr. Boda however, because the ALJ did not base his credibility evaluation solely on the absence of objective medical evidence.  The ALJ properly considered all the evidence in the case record as a whole and the minimal objective medical evidence was only one of several factors described previously supporting the credibility evaluation.

Mr. Boda's final argument is that Dr. Adler found him credible.  Dr. Adler opined Mr. Boda's anxious and depressed presentation was consistent with his claims of problems when going out in public and interacting in job settings.  Admin. R. 161.  The ALJ accepted the claims Dr. Adler found credible, as shown by his RFC assessment precluding jobs requiring work with the general public and significantly restricting interactions with co-workers.  *Id.* at 26.

In summary, the ALJ's reasons for partially discrediting Mr. Boda's subjective statements, including the paucity of objective medical findings, the minimal treatment Mr. Boda has received,

his failure to follow treatment recommendations or seek ongoing treatment other than over-the-counter aspirin, the admission that Mr. Boda's impairments did not cause him to stop working, and his ability to engage independently in a typical range of daily activities, are clear and convincing and rest on reasonable inferences drawn from the record as a whole. *Bruton v. Massanari*, 268 F.3d at 282; *Smolen v. Chater*, 80 F.3d at 1284; SSR 96-7p, 1996 WL 374186. The ALJ's findings are sufficiently specific to permit the court to conclude he did not discredit Mr. Boda's testimony arbitrarily. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Accordingly, the ALJ's credibility determination is upheld.

Mr. Boda challenges the ALJ's evaluation of the statements of his mother, who provided a written statement and testified as a lay witness. An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

Ms. Boda's written statement indicated Mr. Boda has become more introverted and avoids people, other than family members. Admin. R. at 116-17, 119. He has joint pain when lifting, squatting, bending or kneeling. *Id.* at 117. He sometimes has difficulty with concentration. *Id.* Ms. Boda testified that she sees Mr. Boda for a couple of hours on Sundays. He tells her of severe headaches, but during the visits "he seems pretty good." *Id.* at 204. He sometimes has difficulty focusing, takes longer to do tasks than he should, lacks patience, and has pain in the shoulders, back and neck. *Id.* at 205-07.

9 - OPINION AND ORDER

Despite the limitations she described, Ms. Boda indicated Mr. Boda spends his days working on his car, watching television and reading. *Id.* at 112, 116. He prepares his daily meals and performs all of the house and yard work. *Id.* at 114. He shops, drives, pays his bills and handles his finances. *Id.* at 115.

The ALJ found Ms. Boda's statements inconsistent with Mr. Boda's allegations of significant limitations in the ability to perform activities. *Id.* at 28. Indeed, her statements suggest that he experiences pain, impatience, and poor concentration, but do not establish the severity, frequency or limiting effects of these symptoms. Her statements do not establish specific limitations in work-related functions. She describes a range of activities inconsistent with an inability to perform all work. Accordingly, the ALJ could reasonably conclude that her statements were credible but did not support disability.

Mr. Boda believes his mother's testimony established he did not have the ability to perform regular, full-time work on a continuing basis. Even if the evidence could be interpreted to support Mr. Boda's argument, the court is not free to adopt that interpretation. The ALJ's factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

To the extent Ms. Boda did state specific functional limitations, the ALJ's decision includes ample reasons for discrediting such statements. For example, Ms. Boda suggested some degree of limitation in concentration and focus, but the ALJ relied on Dr. Adler's opinion indicating no significant impairment in memory, concentration, verbal skills or calculation tasks. Admin. R. 161. Ms. Boda suggested pain in the neck, shoulders and back, but orthopedic and neurological

examinations revealed no abnormalities. *Id.* at 144, 147. Ms. Boda suggested Mr. Boda experienced severe headaches, but Mr. Boda told Dr. Rozell these were usually mild and only rarely severe. *Id.* at 146. In addition, to the extent Ms. Boda's statements suggest significant functional limitations, her statements are susceptible to the reasons the ALJ articulated to discount Mr. Boda's subjective statements.

In summary, the ALJ did not impermissibly disregard Ms. Boda's statements without comment or discredit her statements without reason. Instead, he considered her written statement and testimony and found them generally credible, although not supportive of complete disability. Admin. R. 28. To the extent her statements did suggest significant functional limitations, the ALJ articulated adequate reasons for discounting those statements. Accordingly, the ALJ's evaluation of Ms. Boda's written statement and testimony is upheld.

## B.    **Vocational Hypothetical**

The VE testified that a hypothetical person with the limitations in Mr. Boda's RFC assessment would be able to perform his past relevant work as a polishing machine operator and pipe cutter. Admin. R. 200. Mr. Boda contends the ALJ elicited this testimony with hypothetical limitations that did not accurately reflect his actual functional limitations. In particular, Mr. Boda contends the hypothetical limitations did not reflect that he would miss work more than 2 days per month due to headaches.

The ALJ considered all the evidence and posed his vocational hypothetical question based on the limitations supported by the record as a whole. The hypothetical limitations reflected reasonable conclusions that could be drawn from the evidence in the record. The medical records cited in Mr. Boda's brief document an absence of several days in September 1999, but do not support

the frequent absences Mr. Boda wishes to insert.  Admin. R. 144.  An ALJ is not required to incorporate limitations not supported by the record.  *Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir. 2001);  *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

The court must uphold the Commissioner's determination if it is supported by substantial evidence, even if the evidence can rationally be interpreted in a way that supports Mr. Boda's additional limitation.  *Andrews v. Shalala,* 53 F.3d at 1039; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Mr. Boda's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

For the foregoing reasons, the ALJ's decision is based on correct legal standards and supported by substantial evidence.  The Commissioner's final decision is AFFIRMED.

DATED this  23rd  day of April, 2008.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge